Reversed and Remanded and Memorandum Opinion filed April 3, 2007








Reversed and
Remanded and Memorandum
Opinion filed April 3, 2007.

 

                                                                                                                                                            

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00142-CV

____________

 

JOE ALFRED IZEN, JR., Appellant

 

V.

 

GEOFFREY SJOSTROM AND THE DON
BELTON LEGAL DEFENSE FUND A/K/A ATLAS LEGAL DEFENSE FUND, Appellees

 



 

On Appeal from the 61st
District Court

Harris County, Texas

Trial Court Cause No. 2002-23947

 



 

M E M O R A N D U M   O P I N I O N

This case arises out of appellant, Joe Alfred Izen Jr.=s (AIzen@), claims for
attorney=s fees, libel, and
breach of fiduciary duties.  In eleven issues, Izen appeals a take-nothing
judgment entered in favor of appellees, Geoffrey Sjostrom (ASjostrom@) and The Don
Belton Legal Defense Fund a/k/a Atlas Legal Defense Fund (collectively referred
to as Athe Fund@).  After
reviewing Izen=s issues, we reverse and remand.








I.  Background

Sometime during 1985, Izen began representing a group of
investors involved in litigation (Aunderlying
litigation@) with the Internal Revenue Service over the federal
tax consequences of an investment program set up by the late Henry Kersting (AKersting@).  Kersting hired
Izen to represent the investors and was Izen=s primary contact
regarding the underlying litigation.  Kersting set up a fund, The Don Belton
Legal Defense Fund, which the investors contributed to in support of their
defense in the underlying litigation.  Izen was paid his fees out of the Fund. 
Kersting also gave periodic updates as to the status of the case to the
investors.

While the history of the underlying litigation is quite compelling,
a detailed recitation of those facts is unnecessary in this appeal.  Suffice it
to say that Izen tried the case for at least fifteen years through various tax
and appeals courts obtaining reversal of judgments on two different occasions. 


When Kersting passed away in the spring of 2000, a group of
the investors (Athe Steering Committee@) purported to
take over The Don Belton Legal Defense Fund and the management of the investors= representation in
the underlying litigation.  The Steering Committee also renamed the Fund, Atlas
Legal Defense Fund.  Sjostrom, while not an investor or committee member, acted
in some representative capacity for Atlas Legal Defense Fund.[1] 









The course of events following Kersting=s death is highly
contentious, and we provide only a general overview of the facts leading to the
dispute at hand.  At some point after the Steering Committee took over the
Fund, they decided to explore alternatives to Izen=s representation. 
Eventually, the Fund allegedly fired Izen as counsel and hired Michael Minn. 
It is during this period that Izen claims AThe Wayne Young
Story@[2] was circulated by
Sjostrom and the Fund with the intention of persuading the investors to
acquiesce in the change of counsel.  Additionally, Izen claims that Sjostrom
and the Fund refused to pay  attorney=s fees which had
accrued prior to him being fired.

Izen brought suit against the Fund, the members of the
Steering Committee, and Sjostrom alleging breach of contract for the unpaid
attorney=s fees, libel
arising out of The Wayne Young Story, and breach of fiduciary duties.  Izen
either failed to secure service on or settled with all members of the Steering
Committee.[3] 
Izen tried his claims against the Fund and Sjostrom and the jury returned a
verdict against him.[4]

II.  Analysis

We first address Izen=s seventh issue,
as it entails matters that are dispositive to most of his other issues.  In his
seventh issue, Izen contends the trial court erred in refusing his motion to
compel discovery from Sjostrom.  We review a trial court=s discovery
rulings under an abuse of discretion standard.  Johnson v. Davis, 178
S.W.3d 230, 242 (Tex. App.CHouston [14th Dist.] 2005, pet. denied); Wheeler
v. Methodist Hosp., 95 S.W.3d 628, 643-44 (Tex. App.CHouston [1st
Dist.] 2002, no pet.).  A trial court abuses its discretion when it acts in an
arbitrary or unreasonable manner or without reference to any guiding rules or
principles.  Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985). 








In general, a party may obtain discovery regarding any
matter that is not privileged and is relevant to the subject matter of the
pending action.  Tex. R. Civ. P. 192.3. 
A party has thirty days to respond to a request for production and an
interrogatory request.  Tex. R. Civ. P. 196.2,
197.2.  A party may respond to a discovery request by providing the
information, objecting to the request, or asserting a privilege.  See Tex. R. Civ. P. 193.1-193.3.  It is the
affirmative duty of the party from whom discovery is requested to provide an
objection or assert a privilege protecting them from the discovery.  See In
re Union Pac. Res. Co., 22 S.W.3d 338, 340 (Tex. 1999) (holding that a
party who Aseeks to exclude documents, records or other matters
from the discovery process has the affirmative duty to specifically plead the
particular privilege or immunity claimed@).

Izen requested information from Sjostrom through
interrogatories and requests for production.  The record shows that Sjostrom
never responded to Izen=s requests and that Izen, following thirty
days after he requested the discovery, filed a motion to compel.  Without
providing findings, the trial court denied Izen=s motion to
compel.  We find this was an abuse of discretion.  The rules clearly mandate
that the party from whom discovery is requested must respond to the discovery
request in some way, whether by producing the information, providing an
objection, or asserting a privilege.  See Tex. R. Civ. P. 193.1 (stating that a party Amust respond to written
discovery in writing within the time provided by court order or these rules@) (emphasis
added).  Sjostrom simply failed to respond.  Because the record does not reveal
any basis upon which the court could have properly refused to compel Sjostrom=s response in the
face of rules that clearly mandate that a response be provided, we find that
the trial court abused its discretion.








We also find the trial court=s error in denying
Izen=s motion to compel
requires reversal.  Much of the information that Izen requested through the
interrogatories and requests for production appears to be essential to the
development of his case.  For instance, Izen requested information inquiring
into the Fund and Sjostrom=s knowledge of The Wayne Young Story, and
he requested production of all letters or other correspondence authored by
Sjostrom or the Fund which mentions his name.  It does not appear from the
record that Izen was able to obtain the information he requested from other
sources.  Many of Izen=s requests might have been subject to
various objections or privileges, however, it is not the duty of this court to
supply such.  See In Re Union Pac., 22 S.W.3d at 340.  We find that,
because Izen was denied access to information that is critical to the pursuit
of his claims, he was prevented from properly presenting his case to this
court.  See Tex. R. App. P. 44.1(a)(2). 
We sustain Izen=s seventh issue.

In his tenth issue, Izen complains that Athe trial court
erred in denying Izen judgment against Don Belton Legal Defense Fund based on
service on the Fund=s trustee/manager, Sjostrom, and the Fund=s default.@  The record does
not show that the trial court denied Izen judgment against the Fund because of
a failure to serve process.  However, for purposes of the proceedings on
remand, we find that the Fund was in fact properly served.

The entity in this case appears to be an unincorporated
nonprofit association (AUNA@).  Texas law
defines an UNA as Aan unincorporated organization, other than
one created by a trust, consisting of three or more members joined by mutual
consent for a common, nonprofit purpose.@  Tex. Rev. Civ. Stat. Ann. Art. 1396‑70.01,
' 2(2).  In this
case, there is no evidence that this association was either incorporated or
created by a trust.[5] 
The record shows that the Fund was made up of at least three members[6]
and that the Fund=s only ostensible purpose was to pool the
investors= money together for common representation in the tax
litigation.  Such a purpose is likely not for profit.  Thus, the Fund appears
to fall into the category of an UNA.  








The Texas Uniform Unincorporated Nonprofit Association Act
(ATUUNAA@) states that an
unincorporated association may be served through Aan agent
authorized by appointment to receive service of process, an officer, a managing
or general agent, or a person authorized to participate in the management of
[the association=s] affairs.@  Tex. Rev. Civ. Stat. Ann. art. 1396‑70.01,
' 14.  The return
of service on record states that the Fund was served through AGeoffrey Sjostrom,
Auth. Agent.@  A return showing delivery of process to an agent
authorized by law to receive process on behalf of the principal is prima facie
evidence that the person served is in fact such an authorized agent.  Pleasant
Homes, Inc. v. Allied Bank of Dallas, 776 S.W.2d 153, 154 (Tex. 1989); see
also Conseco Fin. Servicing Corp. v. Klein Indep. Sch. Dist., 78 S.W.3d
666, 671 (Tex. App.CHouston [14th Dist.] 2002, no pet.)
(following the majority rule that Aa recital in the
petition that a named person or entity is the registered agent for service on
the defendant is prima facie evidence of that fact, sufficient to support a
default unless the defaulted defendant proves otherwise@).  The party
claiming that the person served is not in fact a proper agent has the burden to
show that.  Pleasant Homes, 776 S.W.2d at 154; see also Conseco,
78 S.W.3d at 671.  Therefore, the return of service on the Fund through
Sjostrom as the authorized agent was prima facie evidence of proper service and
the Fund has failed to rebut that presumption, up to this point, by
establishing service was improper.  As a result, it appears the trial court had
jurisdiction over the Fund.  Therefore, we remand all of Izen=s original issues
against both Sjostrom and the Fund.

In Izen=s eleventh issue, he argues that the trial
court erred in denying his motion for substitute service on Gary Tjossem.  In
his original complaint, Izen brought suit against all of the members of the
Steering Committee, including Gary Tjossem.  Izen attempted to secure service
on Tjossem by having a constable deliver the citation to Tjossem at his
residence.  The constable attempted to serve Tjossem on four separate occasions
but was unsuccessful.  Izen twice petitioned the court for substitute service
on the basis of these attempts, and the trial court denied both of those
motions.








We must first determine the applicable standard of review. 
Generally, an abuse of discretion standard applies when a trial court has
discretion to either grant or deny relief based on its factual determinations. 
In re Doe, 19 S.W.3d 249, 253 (Tex. 2000); Karlen v. Karlen, 209
S.W.3d 841, 843 (Tex. App.CHouston [14th Dist.] 2006, no pet.). 
Texas Rule of Civil Procedure 106(b) states that:

Upon motion supported by affidavit
stating the location of the defendant=s usual place of
business or usual place of abode or other place where the defendant can
probably be found and stating specifically the facts showing that service has
been attempted under either (a)(1) or (a)(2) at the location named in such affidavit
but has not been successful, the court may authorize service.

Tex.
R. Civ. P. 106(b) (emphasis added).  The use of the term Amay@ indicates that
the legislature intended to give the courts discretionary authority.  See
Tex. Gov=t Code ' 311.016 (use of
the term Amay@ in a statute creates discretionary
authority).  The court=s determination as to whether to allow
substitute service is clearly based on factual considerations, such as the
attorney=s due diligence in
securing service.  Therefore, we examine the trial court=s denial of Izen=s motion for
substitute service for abuse of discretion.

A trial court abuses its discretion when it acts in an
arbitrary or unreasonable manner or without reference to any guiding rules or
principles.  Downer, Inc., 701 S.W.2d at 241-42.  A court of
appeals may not reverse a trial court for abuse of discretion merely because it
disagrees with a decision by the trial court, if that decision was within the
trial court=s discretionary authority.  In re EPIC Holdings,
Inc., 985 S.W.2d 41, 56 (Tex. 1998); Beaumont Bank, N.A. v.
Buller, 806 S.W.2d 223, 226 (Tex. 1991).








We hold that the trial court did not abuse its discretion
in denying Izen=s motions for substitute service.  In
recording on its docket sheet that it denied Izen=s first motion for
substitute service, the trial court noted that service was only attempted Aduring working
hours between nine a.m. and three p.m.@  Izen=s affidavits in
support of his motions support the court=s observation. 
Additionally, instead of making another attempt at securing service on Tjossem
after his first motion was denied, Izen simply filed another motion supported
by the same affidavits he used in support of his first motion.  Finally, Izen
testified at trial that he had reached a settlement agreement with Tjossem to
release him from the suit, but it had not been Aformalized.@  In order to
reach an agreement with Tjossem, Izen ostensibly had contact with him, which
makes one pause as to why he could not have similarly secured service on
Tjossem.  Based on these facts, it appears that Izen did not exercise the
reasonable diligence required under Texas law to secure service on an
individual.  See Rigo Mfg. Co. v. Thomas, 458 S.W.2d 180, 182 (Tex.
1970) (holding that plaintiff must continuously exercise due diligence in
obtaining service over an individual in order to toll the statute of
limitations).  Consequently, we find that the trial court did not act
arbitrarily, unreasonably, or without reference to any guiding principles or
authority.  We overrule Izen=s eleventh point of error.

Izen additionally asks this court to render judgment in his
favor against Sjostrom for unpaid attorney=s fees arising out
of Izen=s work on the
underlying litigation.  Izen does not point to facts proving that Sjostrom,
personally, reached an agreement with Izen to pay his attorney=s fees.  In fact,
as Izen observes, ASjostrom admitted that Izen had an
agreement with the defense fund to provide legal services (emphasis
added).@  Generally,
Sjostrom would not be personally liable for the contractual obligations of the
Fund.  The only theory that Izen appears to propose is that Sjostrom, as a
member of the Fund, was liable for the Fund=s contracts
because all members of an unincorporated association are liable for its
contracts.  We briefly address that theory.

As discussed above, the entity in this case appears to be
an unincorporated nonprofit association (AUNA@).  The recently
passed TUUNAA changes the common law rule in stating that a person is not
liable for the contracts of the nonprofit association merely because that
person is a member or a person authorized to participate in the management of
the association=s affairs.  Tex. Rev. Civ. Stat. Ann. art. 1396‑70.01, ' 7(b).  Therefore,
even assuming Sjostrom was a member of the Fund,[7]
Izen would be required to prove more to show that Sjostrom was liable for the
Fund=s contracts.  Izen
has failed to prove such.   








We reverse the trial court=s judgment as to
Izen=s claims against
both Sjostrom and the Fund.  Because of our finding that the trial court
committed reversible error in denying Izen=s motion to
compel, we need not reach his other issues seeking reversal.  We also find that
the trial court did not abuse its discretion in denying substitute service on
Gary Tjossem. We further decline to render judgment in Izen=s favor with
respect to his claim against Sjostrom for breach of the fee agreement.  We
remand Izen=s claims to the trial court for further proceedings
consistent with this opinion.  

 

 

 

 

 

/s/      Frank Price

Former Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed April 3, 2007.

Panel consists of
Justices Fowler and Edelman and Former Justice Price.[8]

 









[1]  Sjostrom described himself differently at different
points in the trial.  At one point he described himself as an accountant of the
Fund, while another time he referred to himself as the trustee of the Fund.





[2]  AThe Wayne Young
Story@ purports to be a brief description of Izen=s representation of one of the investors, Wayne
Young.  The document alleges that Wayne Young was Asingled out@ by
the IRS following the tax court=s unfavorable
ruling and that the IRS put liens on Wayne Young=s property.  The document further alleges that Wayne Young tried to
contact Izen during this period of time but was unsuccessful.  As a result, the
document states, Wayne Young Awas left to
fend for himself.@  





[3]  The trial court never obtained jurisdiction over
Gary Tjossem, a member of the Committee, as he was not properly served.  Izen
complains on appeal that the trial court, in denying his motion for substitute
service, prevented him from securing service on Tjossem.  We address this issue
below. 





[4]  The jury was charged only as to Sjostrom=s liability, and only as to Izen=s attorney=s
fees claim against Sjostrom.  Izen brings various issues on appeal regarding
the trial court=s failure to submit his other claims against Sjostrom
and the Fund.  





[5]  Izen referred to Sjostrom as a trustee (in addition
to other labels) during trial and, at times, Sjostrom refers to himself as the
trustee of the Fund=s bank account.  However, there was no evidence
offered to substantiate that the Fund=s
legal form was a trust.





[6]  It is unclear whether the Fund members were the
investors themselves, who totaled over 100 individuals, or the Steering
Committee members, of which Sjostrom testified there were at least five. 





[7]  At trial, Izen attempted to prove that Sjostrom was
a member while Sjostrom denied this status.





[8]  Former Justice Frank Price sitting by assignment.